There are two Medtronic products at issue in Depuy's appeal, both of which were incorrectly and erroneously found by the trial court to be non-infringing. Non-infringing, by summary judgment, excuse me. In the interest of time, I'm going to talk both about vertex and bottom loader. The main point on bottom loader is the court erred there by turning the phrase bore for passing the threaded shaft portion there through into a method of assembly step. With respect to vertex, two main errors. The court committed clear legal error in its analysis of the product, both literally and under the doctrinal equivalence with respect to the issue of vitiation, and the court improperly with respect to both literal infringement and the functioning weighing result test, which was discussed as part of the doctrinal equivalence analysis, took fact issues away from the jury. Vitiation, that comes across, and it's also mentioned with respect to the bottom loader jury. This is not, ladies and gentlemen, excuse me, this is a vitiation case. Vitiation is where the claim limitation is totally absent. It's gone. That's not the situation here. At the time summary judgment was granted, there was full and complete record evidence for both bottom loader and vertex doctrinal equivalent analysis, it's in the record, from Professor Mann and his declarations doing a full and proper doctrinal equivalence analysis. On that point, on the vitiation, with respect to the vertex, your point is that essentially it was approximately spherical and that can include other shapes that are similar, like the conical shape, right? That's what the law says. The court relied on tronzo. Optical disk makes the point that tronzo does not stand for the proposition that you can't have an equivalent of a recited shape limitation. With respect to the bottom loaded screw, where's the opening at the opposite end? I mean, isn't that the opening at the opposite end? Isn't that a claim limitation which is really subject to vitiation because there's really nothing on the other side? Well, Your Honor, the difficulty is, is there was no claim construction, no mark of construction done for that claim. Well, let's take it, you know, as open at the opposite end. Let's assume that the words say that and that the construction is identical, the claim construction is identical to what the words say. The specification would indicate that the limitation in opening 10 being provided opposite said drawer for inserting said screw, Your Honor, it's A111 in the record, it's Column 3, lines 32 through 38 of the 678 pattern. The opening there that's being provided for inserting the screw would appear to be the opening on the flat spot of the rounded portion of the pedicle screw, which would be actually, Your Honor, would be here where you put tool into the pedicle screw when you're screwing into a person's bone. That's why I said, Your Honor, absent a mark of construction here, we're guessing at what the intrinsic evidence says is the appropriate interpretation. No, we aren't. We're just reading the claim in light of the specification. Well, Your Honor, opening being provided opposite said bore, the bore is below here. The opening, so the bore would be my left hand, the opening is any place opposite the bore and it's not bounded by the size of the receiver member according to the specification or according to the claim. So it's literally, here's the bore, the opening is any place on the opposite side of the bore vertically upwards, anywhere along that continuum. Is the opening limitation an issue before us? Well, it was not reached below, Your Honor, there was an attempt made, as the court recalls, the Markman took place after the court had granted summary judgment on bottom loading on the basis of the failure of the bore limitation to be present. When the Markman was held, DePue asked for Markman construction to be made on the opening and Metronic convinced His Honor that it was moved, the summary judgment motion had been granted, it was moved. So there was a request made for a Markman construction and we didn't get it. But let's accept that, in Judge Lynn's question, I mean, just because there was no actual Markman done, why does that make it moot? That makes the whole issue moot? No, I'm sorry. The argument was when DePue requested of His Honor that at the Markman there be a construction of the opening limitation, Metronic said you don't need to reach that, Judge, you've already decided summary judgment on bottom loader, it's out of the case. That's what I meant by saying they contended it was moot, you don't need to give us a Markman. Well, would we be precluded on appeal from affirming the district court summary judgment grant on the bottom loaded screw based on the opening at the opposite side rather than on the other limitations that have been largely briefed? There is precedent by this court that strongly says that if there's no claim construction below on an element that is critical, there is precedent by this court that says it should be remanded because... Is there anything other than Nozomi in terms of the precedent you're citing? Nozomi is the precedent that I had in mind, Your Honor, and that's the one that we had in our briefs, and that is very much on point. It really, with respect, our suggestion would be is because it requires a review of the intrinsic record, and it may require consideration of other evidence that could require consideration of extrinsic evidence, that the appropriate way to do this would be to remand it with respect. With respect to the Bohr limitation, I take it one of your arguments is that there's nothing in the claim that requires that the Bohr be formed from within this receiver member as an integral, unitary structure? Absolutely, Your Honor. There's nothing in the intrinsic record, certainly nothing on the face of the specification that says that the receiver has to be one piece, and in fact, the way the analysis was done at the summary judgment stage, there was inappropriate inclusion, essentially, of a method reading into it's a product claim, and we got steps of assembly, essentially, included, and this court in IPXL Holdings v. Amazon.com, 4-34-13-77, last year, said you don't do that. You don't put method steps in the middle of a product claim, and that's why in our briefing we suggested to Your Honors that on the bottom row, this is really a claim construction issue, that it's a major error in the way the claims were construed that drove how Judge Harrington got to the summary judgment. But it's not fundamental to your argument as to whether, in fact, that is a broadly applicable holding about whether method steps can be included in a product claim, is it? It's certainly centered to how we briefed the point of your Honor. On a space, if you look at the claim language, the claim language has function limitations, and our position would be as the lead on the space, it doesn't have method of assembly, but that's not how Judge Harrington construed it. And of course, Your Honors, reapply Rule 56 under these circumstances, if you so choose. Again, our suggestion would be is that remand for appropriate construction on these various elements is the best way to go, because once you get past Bohr, as Judge Prost said, we still have opening, and that's never been construed. But yes, IPXL, which is on the point, supports the position that we took in the briefing. He was an error in construing, as a matter of law, a strictly product claim to read as if it was a product by process claim. This is not a product by process claim. Well, let me turn you back to the vertex issue. Yes, Your Honor. It seems from the briefing that your view would be that unless someone gets up there and says no other, unless there's witness testimony similar to the way there was at Tronso, Tronso cannot apply and there is no vitiation. And you seem to rely heavily on the testimony. Is that your view? No. Unless someone gets up there and testifies to that, Tronso can't apply? Well, this Court's precedent is eyeing restraint. Vitiation, Your Honor, with respect, is a work in progress as far as I understand how the Court is treating this. There are many cases that say that this Court takes vitiation as an issue of law. So whether somebody's going to testify about whether there's vitiation or not, testimony would go more towards the functionally result analysis that Judge Harrington did where we maintained he took that away from the jury because he found a difference in contact there. We're saying that Tronso stands for the product. Tronso is one of these cases that says you've got this or you've got nothing. If you look at how this Court addressed Tronso in Freedman, Chair, the recent case where the Court pointed out we're very troubled by what the expert testified. The reason there's vitiation in Tronso is because here's the limitation. And then the expert said it could be anything. Well, that effectively means there isn't any limitation. Here's the literal. And he's saying it can be any old shape in the world. That's not appropriate. We're saying that's not what the situation is here. But the device is very similar, is it not, to Tronso? I mean, Tronso was approximately conical or spherical. Which is exactly what you have here. It was a hip replacement device. The construction of the hollow spherical-shaped portion here was approximately spherical. We do not agree that it's that close. If you're honored to look at Ethicon and how the Court addressed Claim 6 in Ethicon, the Court was very clear that everything is factoring in these circumstances. And as far back as, interestingly, Ives v. Hamilton, Justice Fred, in the 1875 United States Supreme Court case, made the point that curves are often treated as a succession of very short straight lines. What's on the board right over here, Your Honors, is A10564 and A10680. These are two photographs. Actually, it's the same structure, but marked somewhat differently. The one on the left, both of these were marked by Dr. Polk, their expert. One was marked by him on the red line. And here's the alleged conical portion of these things. This is the type of limitation that Ives, that Ethicon with respect to Claim 24, that Friedman with respect to the methodology, that optical disk, and Winans, 1854 United States Supreme Court case, said these are the types of things that you look at and you can find equivalence. And that's the position that we're saying as a matter of law, the cases that fit this circumstance most closely all favor an analysis for equivalence. So you don't cut us off at the pass with vitiation. Vitiation, as I understand how it got into the law. You may want to save your rebuttal time. I was going to say, don't worry about vitiation so much. Yeah, I've got your answer. Yes, ma'am. We understand the issues. And let's save the rest of your time for rebuttals. Thank you. Mr. Thomas. Good morning, Your Honors. Mr. Thomas, Ward, counterclaimant, and cross-pellant Medtronic-Stockholm Organic. I'm going to start by addressing the issues with respect to the burden that we have on our appeal, our cross-appeal, and that's the jury verdict with respect to the MAS product. And our position on that is very straightforward and very clear. There was no testimony presented at trial or anywhere else to establish why the claim requires a spherically shaped portion in the receiver chamber against which the spherically shaped head of the screw must be pressed. Why is that relevant? Because the claim requires it, Your Honor. It's an element of the claim. Look at the function where it was on. Well, it's an element of the claim, but what is relevant about the question about why that element is contained in the claim? Because we urge that it has to have a function, Your Honor. If it's in the claim, it's not there just because it's there. For example, in this Court's recent decision in Bicon, the question was whether something that was conical could be equivalent to something that was frusto-spherical. So when you're saying there's no testimony about why the element is contained, is it directed to the function? The shape, yes. The function of the shape, Your Honor. What happened here is the testimony that came in through their expert really just wanted to interpret the claim as defining any kind of ball and socket joint regardless of the shape of the receiver. But I'm trying to understand the relevance of this. You say there was no testimony as to why was this brought out before the jury, that this was a flaw in their burden? Yes, Your Honor. It was. And we also brought it up in our JMOL post-trial motions under Rule 50B. And we presented or we explained that. Look closely, for example, at Appendix Page 52. But where was the error? If all of this was before the jury, are you asking us to refine the fact as to why? No, Your Honor. What I'm saying is it was not before the jury. There was no particularized testimony and linking argument on the function, way, or result for the shape limitation that exists in Claim 1. Absent there being specific particularized testimony and linking argument explaining for the jury the function of having a spherically shaped receiver member that presses against a spherically shaped screw head. The way that that function is achieved with a spherically shaped receiver member receiving a spherically shaped screw head to get the result. In effect, Your Honor, the testimony ignored that specific claim limitation. There was a failure of proof on whether or not the accused device has an equivalent to the spherically shaped portion limitation that's expressly recited in the claim. I was a little confused by the excerpts from the record that were included in both sides' briefs on this point. Was there some testimony relevant to that point that was introduced with regard to the literal argument? And then is it your view that even if there was testimony on the literal, that testimony can't be then carried over to the equivalent? I think I understand where you're going, Your Honor. It seems to me that there was testimony. The testimony that you're saying that's lacking on the equivalent issue was there on the literal, and so your point isn't that the jury never heard it. It's just that they didn't hear it in the context of the equivalent argument. Well, yes and no, Your Honor, and here's why. I think what you're asking me is couldn't the jury have literally decided that there was a spherically shaped portion present in the accused device? No, that's not my question, so let me clarify it. Just answer. The testimony that you've just gone through on function away result that you say was absolutely positively lacking with regard to equivalence, wasn't there some testimony relevant to that issue presented in the context of the other side's case on literal infringement? The only testimony presented on that issue, Your Honor, was their expert statement. Is the answer yes? The answer is no, not on the pressed against limitation, Your Honor. Not on the pressed against limitation. On the limitation saying whether there's a spherically shaped portion in the accused receiver member, yes, there was testimony on that literally. Studiously avoided in that testimony was whether or not the accused device also met the limitation that the screw had been pressed against a hollow spherically shaped portion in the receiver member. That testimony was not elicited. And wasn't there testimony on the edge that it does touch the edge? Yes, Your Honor, but no reasonable jury could have found that that testimony met the requirement that the screw had pressed against a hollow spherically shaped portion. Pointing, for example, Your Honor, what we have over here in this model is a cutaway section of the accused MAS device. You can see here, Your Honor, that the screw had pressed on this edge. Their argument was that the edge comprises part of this rounded surface, that the rounded surface is spherical, so therefore we're good to go. The problem with that argument, Your Honor, is the claim doesn't just say pressing against a projection. The claim says that the screw head has to press against a hollow, hollow spherically shaped portion. Where this screw head rests is an edge. It's a convex point. But the claim doesn't say all of the portion or the middle of the portion or a substantial part of the portion. It simply says presses against a hollow portion. A hollow portion. Which includes the edge, does it not? No, the edge is not hollow. That's the point we would make, Your Honor, that the edge is not hollow. Well, the edge is part of the portion. Well, we would respectfully disagree. An edge is at best a transition, but it's certainly not a hollow point. It's a projection out, Your Honor. It's not a cup. It's not something that sits like a ball sits in a socket. It's sitting on an edge, and an edge is not hollow. The claim doesn't say there's a projection defined by the bore against which the head of the screw rests. This is a really key point on our appeals, Your Honor. This claim has very specific structural language in it. On that point, are you arguing vitiation, or are you arguing function may result on the edge issue? On the edge, we're arguing vitiation, and really more likely specific exclusion, much as it's described in this Court's recent decision from March 20th of this year in the Bicon v. Strauman case. And I realize they're similar. But, yeah, we're saying that this applicant, when he went to the patent office and told the patent office what he wanted a patent on, defined a particular geometry, a geometry which has to exist in an accused device. Moreover, he defined that geometry as having two functions. One, the geometry has to be spherically shaped, and two, it has to be a hollow spherically shaped portion against which the screw head is pressed. And that's what he told the patent office. That's what he got a patent on, because now what we're faced with, Your Honors, is having to defend Medtronic as their competitor in this market, or the public at large, is faced with having to figure out, well, what's really the important limitations in this claim? Is the spherically shaped limitation important? Is the hollow limitation important, or is it just important that it be a multiaxial screw? Can I move you on to just another point in the interest of time? Yes, Your Honor. And that's on this exclusive license issue. Clearly, you cite the case as lost profits as a question of law. Yes. Is the determination as to whether or not there was an exclusive license in that case, is that a question of law or a question of fact? It's a question of law, Your Honor, because we believe that it goes to interpretations of the agreements. Recognize that the... Because the court clearly treated it as if it was a question of fact. I mean, on the JMAL, they found fact, and I didn't really see your brief arguing that point so much. Because, I mean, it really does matter, does it not? I mean, seemingly, arguably at least, it matters whether it's a question of fact or law in terms of how we evaluate the JMAL here. Absolutely, it does, Your Honor. And recognize that the argument here on the flip side of that is that the technology agreement in 1993 somehow impliedly conveyed an exclusive patent grant, an exclusive patent license. The problem with that is that the technology agreement... Well, let me ask, before we get to the question of law and fact, do you have any case? I mean, you cite the cases on lost profits being a question of law, but I didn't see any cases cite in your brief for an exclusive question of whether or not there was an exclusive license. Being the question of law, I didn't see you cite any cases in the brief. Do you happen to have any? We say that the evidence wasn't presented to establish that there was exclusive rights. The only evidence in the record. So I guess the answer to your question is, is it a factual determination as to whether a license agreement is exclusive versus non-exclusive? Yes, that can be a factual determination. That's not the issue here, clearly. Right. But in order to determine whether or not here, based on the conduct and the writings or whatever, whether or not that constituted an exclusive license, you say that's a question of law. Yes, because it's based on the written documents and the court can interpret those technology agreements. What if we have to go to extrinsic evidence? Well, you don't just have to look at the document itself. It's not extrinsic. It's the technology agreement is what is being alleged to constitute the conveyance of exclusive patent rights. But the technology agreement on its face doesn't do that. And so you can't go into extrinsic evidence, parole evidence. Well, but what if we conclude that that's ambiguous, that that's unclear because it talks about technology and knowledge and it's very broad and it doesn't exclude anything. So why can't we conclude at least that? I would suggest, Your Honor, that it can't be ambiguous because there's a separate and distinct writing titled patent license agreement that's different than the technology agreement. If Your Honor were to conclude that the technology agreement somehow overlapped with the exclusive patent license agreement and therefore it's ambiguous as to what the scope of those two agreements are, then plainly, you could start looking at extrinsic evidence for that. But we would submit that's not what happened here. Okay, now we're into your rebuttal on your cross-appeal and you haven't responded to their direct appeal. Do you want to use your rebuttal time now? Yes, Your Honor. As a matter of fact, I think that would be useful. And what I'd like to point out there is this issue with respect to the functional way of resolving a claim vitiation, what we're saying here is that the equivalency argument presented, and I would urge that the court look at pages 33 and 47 and 48 of their opening brief, where they lay out what they say is the function way of result test that was presented by their expert on the MAS and that they would have presented at trial on the vertex. The problem with that analysis, Your Honor, is that it's independent of the shape of the receiver member in any accused device. What about the bottom-loaded screw? The bottom-loaded screw, right. And whether or not the opening argument was... The opening is clear, Your Honor. The claim says there's an opening ten opposite the bore for inserting the screw. And if there's a bore at the opposite end for through which the threaded screw shaft passes, Your Honor, again, this is a claim language issue. We're not trying to read, and neither did the district court, process limitations into this claim. The claim is written to require structure that allows certain things to happen. The claim is written in the permissive, the fore-passing, the fore-inserting. And that's how they chose to define their invention. They couldn't define their invention otherwise. They could have placed the screw head where they wanted it, but instead they chose to define specific structure in the receiver member, an opening opposite the bore. And there are numerals in the claim. We know what opening is being discussed. The opening ten and the opening nine, and the bore nine. But is your view that the district court decided that the summary judgment on the bottom-loaded screw based on the opening issue? Yes, if you look at appendix page 8-4, Your Honor, it's the decision from the district court regarding the summary judgment motion on the bottom-loading screws. And it says specifically that the accused devices are missing both the bore for inserting the threaded shaft to the screw. I'm sorry, the bore for passing the threaded shaft to the screw there through. And it says it's missing an opening opposite the bore for inserting the screw. Recognize, Your Honor, that in these accused devices, for example, the bottom-loaded screws, you can't fit the screw down from the top. Well, where does it say that? I'm sorry. Because you said that in your brief. And you cited 8-4. And I looked and looked at 8-4. And it doesn't say it doesn't have it. The only reference I could see on page 8-4 is on line 1, 2, 3, 4, 5, 7, where it says an opening being provided. But what does the judge say about that? On the very first slide, Your Honor, it says the court concludes that Medtronic's so-called bottom-assembled screws do not infringe the limitation of claim one, which reads. And then he just recites what claim one reads. Well, but he's saying what it doesn't have. Your Honor, he's saying specifically that it doesn't have those two elements. Well, it seems to me, reading this order, that the judge remarked that there is a bore limitation and an opening limitation, but then went on to particularly find that the bore is missing. But there is no conclusion stated with respect to the opening. Well, respectfully, Your Honor, I believe that he says that the accused decides do not infringe the limitation in claim one, which reads, which to me would suggest that he's saying it's not there. But that limitation includes everything, including passing the threaded shaft. Well, that's right. And that doesn't happen here either, Your Honor. Recognize the position that they're trying to urge, the extending through, that for passing means to extend. If you look at figure two of their patent, it says for it's to extend the threaded portion of the shaft. But there's no threaded portion of the shaft where it extends across the bore. So under their interpretation of for passing, meaning to extend it across, it doesn't even read on the preferred embodiment. But do we stick to the opening? In your motion for summary judgment, did you include an argument that it has no opening? Yes, and we believe that's an alternative grounds on which this court can and should affirm the judgment. We believe that those words mean exactly what they say. We further believe that the district court did have those in mind when it wrote this decision. Again, it's the judgment that's being reviewed here. And the judgment was one of non-infringement because we believe the district court was looking, our motions were styled. But you made the separate argument on bottom-loaded screws that it does not have the opening. That was a separate argument. Our motions were styled. Absence of an opening opposite the bore and absence of a bore for receiving. So yes, we argued and briefed the fact that both those elements were missing in the claim limitation. That was plainly in front of the district court. Thank you, Mr. Thomas. Thank you, Your Honor. And Mr. Adamo? I'm going to go real quick. A5205 in the appendix. Please come to the podium so we can make sure it's recorded. I'm sorry. With respect to Judge Post's question about the exclusive license and whether it is a question of fact, it is a question of fact. If you would look at A5205 of the record, Mr. Thomas even agrees with Judge Harrington. After all, the testimony was given about the various license agreements that it is a question of fact. With respect to the various numbers that are next to the claim that were relied on very heavily by opposing counsel, I would suggest, Your Honors, that MPEP-60801M makes clear that in the United States, this is a European-style claim. We don't take the numbers as limiting the claims. Can I go back to the exclusive license points? Yes, Your Honor. How can it be if the technology, if you agree, do you not, that in 1993, at the time of the technology agreement, there was, at the same time, an exclusive license for the patent? And the only problem along with that is that, as everybody conceded later, we messed up because the inventor hadn't really signed away the patent. Am I correct about everything? There was a mistaken belief, there was a mistake in including the 659 application into the exclusive license agreement that involved Ortman, but there is evidence that it was signed to Ortman. So in 1993, at the same time the technology agreement was drafted and signed and agreed to, it couldn't, parties couldn't have possibly intended for that to include the patent. Correct? Because we all agree that the intent was for the patent to be covered by the exclusive license separate agreement. That's not correct. The technology, with respect, Your Honor, the technology agreement on its face, 810-237-255, specifically addresses later acquired technology. The technology agreement was intended to sweep in anything. But didn't you just agree with me that the exclusive license entered into in 1993 was intended by the parties to include the patent at issue? Whatever, 678 or whatever. There was a mistake in the exclusive license. And it was a mistake because the parties intended to have it include the patent. Correct? Wasn't that the mistake? The mistake was listing the 659 application in the exclusive license agreement when it had never been assigned a coordinate in the first place. The technology agreement... So the mistake was that the parties intended to include the patent, but they didn't have the legal ability to include it because the inventor never signed it away. Correct? It was intended to be included in the technology agreement, yes. No, I'm talking about the, what was the mistake in the exclusive license? In listing the 659 application, which was not owned by OrchMed at the time. The 659 was supposed to put, that license agreement was supposed to put the technology into the joint venture. So the point of even that exclusive license was to put all the technology into the technology agreement. Right. So the parties intended in 93 not to have the patent included in the licensing agreement, but to have it included in the exclusive license, in the technology agreement, but to have it in the exclusive licensing agreement. Yes. The end result would be all of the technology was intended to go into the DuPuy joint venture. That was the intention. On Moss, one quick, very quick point. Very quick. We respected the claim language on Moss. This was a question that you asked earlier, Honor. The issue with respect to Vitiate, I'm sorry, not Vitiate in general, I'm going too quickly. We respected the claim element there. The whole battle was not whether there was something that responded to the claim element. The battle was, was there a ball and socket construction, and that is a hinged connection, and that is all over the record. A5548, A5720, Dr. Pope's Cross, A5550. There was no Vitiate. All the elements were fully responded to. Moss, I'm pressing against. This is the podium. I'm pressing on the podium. I'm still pressing on the podium. I'm still pressing on the podium. My finger's right on the corner. I'm still pressing on the podium. This hinged podium in space argument is not the point of construction, and it's just not logical. Thank you. Thank you, Mr. Adamer. Thank you, Mr. Thomas. The case is taken under submission.